1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

11

| | |
|---|---|
| THREE RIVERS PROVIDER NETWORK, INC., | CASE NO. 07CV1900 WQH (BLM) |
| Plaintiff, | ORDER ON DEFENDANTS' MOTIONS TO DISMISS AND PLAINTIFF'S MOTION FOR LEAVE TO AMEND |
| vs. | |
| MERITAIN HEALTH, INC. fka NORTH AMERICAN HEALTH PLANS, INC.; CHRISTINE CALARCO; JOSEPH COFFEY and DOES 1-100, | |
| Defendants. | |

12
13
14
15
16
17
18

HAYES, Judge:

19

       Pending before the Court are Defendants' motions to dismiss for lack of personal jurisdiction

20

and failure to state a claim upon which relief can be granted (Docs. # 21, 22), and Plaintiff's motion

21

for leave to file a Second Amended Complaint (Doc. # 23). The Court finds these matters suitable for

22

submission on the papers and without oral argument pursuant to Civil Local Rule 7.1(d)(1).

23

### PROCEDURAL BACKGROUND

24

       On September 28, 2007, Plaintiff Three Rivers Provider Network, Inc. (Three Rivers) filed a

25

Complaint in this matter against Defendant Meritain Health, Inc. fka North American Health Plans,

26

Inc. (Meritain). (Doc. # 1). On December 20, 2007, Plaintiff Three Rivers filed an Amended

27

Complaint against Defendants Meritain, Christine Calarco, and Joseph Coffey. (Doc. # 14). The

28

Amended Complaint asserts claims for breach of contract, fraud, conversion, and violation of the

1  Racketeering Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1962(a)-(d).  (Doc. #

2  14).

3      On January 9, 2008, Defendants Calarco and Coffey filed the pending motion to dismiss for

4  lack of personal jurisdiction.  (Doc. # 21).  On January 9, 2008, Defendants Meritain, Calarco, and

5  Coffey filed the pending motion to dismiss for failure to state a claim upon which relief can be

6  granted. (Doc. # 22).  On January 9, 2008, Plaintiff filed the pending motion for leave to file a Second

7  Amended Complaint.  (Doc. # 23).

8              **ALLEGATIONS OF THE AMENDED COMPLAINT**

9      Plaintiff Three Rivers is a Nevada corporation "qualified to do business in California." *Am.*

10  *Compl.*, ¶ 3. Plaintiff owns and operates "the Managed Care Strategies" network, and provides health

11  care discounts–through direct contracts between Plaintiff and health care providers–on group health

12  plans. *Am. Compl.*, ¶ 3.  Plaintiff owns, or possess "an ownership interest in," the health care

13  discounts it negotiates with health care providers. *Am. Compl.*, ¶ 47.  Plaintiff's contracts with health

14  care providers provide Plaintiff with exclusive access to the discounts. *Am. Compl.*, ¶ 47.

15      Defendant Meritain is a business "with principal offices" in New York. *Am. Compl.*, ¶ 4.

16  Defendant Meritain provides health care plans and/or access to health care plans to its clients. *Am.*

17  *Compl.*, ¶ 4.  Defendant Christine Calarco is a resident of the State of New York and employed by

18  Defendant Meritain as "Senior Vice President of Operations." *Am. Compl.*, ¶ 5.  Defendant Joseph

19  Coffey is "Director of Cost Management Strategies for a now wholly owned subsidiary of Defendant

20  Meritain, CBSA. *Am. Compl.*, ¶ 6.  Defendant Coffey resides in the State of Minnesota. *Am. Compl.*,

21  ¶ 6.

22      On June 4, 2004, Plaintiff Three Rivers and Defendant Meritain entered into an agreement

23  "whereby [Defendant Meritain] leased access to Plaintiff's network of discounts on group healthcare

24  claims, which network of discounts is based in San Diego County, California." *Am. Compl.*, ¶ 9. The

25  agreement provided that,

26      Three Rivers Provider Network grants to [Defendant Meritain] the right to access the
    network of health care providers comprising the Three Rivers Provider Network (the
27      "PPO Network") and to enjoy the benefit of the PPO Network rates offered by PPO
    Network providers (the "Network Rates") in effect at the time services are provided.
28      Three Rivers Provider Network will make the Network Rates available to individuals
    who are entitled to benefits under a group health or other health plan offered,

1   underwritten or administered by [Defendant Meritain].

2   *Am. Compl.*, Ex. 1. Pursuant to the agreement, Defendant Meritain agreed "to pay [Plaintiff] a fee of

3   [10%] of the savings" that Defendant Meritain or its clients received by using Plaintiff's health care

4   network. *Am. Compl.*, ¶ 11. The agreement defined "Savings" as,

5   the difference between the charges of the Participating Provider, as set forth on a
    claim, and the amount adjudicated as due to the Participating Provider by [Plaintiff
6   Three Rivers], as a repricing agent, or by Payor pursuant to such a claim.

7   *Am. Compl.*, Ex. 1 at 3.

8   As a condition of the agreement, Defendant Meritain agreed to "ensure that the Three River

9   Provider Network and/or its affiliate partners are identified" on EOB (Explanation of Benefits) forms

10  given to Meritain's clients or health care providers. *Am. Compl.*, Ex. 1. The agreement required

11  Defendant Meritain to identify Plaintiff on EOBs because (1) Plaintiff's contracts with health care

12  providers require that Plaintiff be identified on any EOB, and (2) Plaintiff's identification on EOBs

13  allows Plaintiff to keep track of the total savings "achieved by [Defendant] Meritain under the contract

14  and thereby know the exact amount [Defendant] Meritain owes to [Plaintiff] as a result." *Am. Compl.*,

15  ¶ 11 & Ex. 1.

16  "Despite its agreement to do so, Meritain did not use any effort to ensure the inclusion of

17  Plaintiff [Three Rivers'] name, or the name of any of [Plaintiff's] affiliates, on the EOB forms." *Am.*

18  *Compl.*, ¶ 12. Defendants Meritain, Calarco, and Coffey intentionally omitted Plaintiff's name from

19  relevant EOBs as early as 2004 as part of a "scheme to avoid payment" to Plaintiff under the

20  agreement. *Am. Compl.*, ¶¶ 12, 17.

21  Plaintiff "only discovered Defendants' scheme to avoid payment under the contract" because

22  "a large number" of health care providers began to contact Plaintiff when they received EOBs on

23  which Defendant Meritain omitted Plaintiff's name. *Am. Compl.*, ¶ 12. For example, on October 28,

24  2004, Plaintiff received an inquiry from Minnesota Epilepsy Group, which read in pertinent part,

25  I am having a hard time reading these explanations of benefits. Please review the
    attached EOBs and contact me at the number above. I contacted the payor and they
26  said there was an agreement made thru (sic) Global Claims Resources. We did not
    make an agreement with GCR, but do have a contract with [Three Rivers Provider
27  Network]. I am really confused.

28  *Am. Compl.*, ¶ 12 (internal quotations omitted). "[Defendant] Meritain's custom and practice of

breaching the contract and misidentifying the source of the discounts on the EOBs deprived [Plaintiff] of the contractual fee and directly interfered with [Plaintiff's] ability to do business with [Plaintiff's] providers." *Am. Compl.*, ¶ 12.  Plaintiff "faithfully performed all obligations, conditions, covenants and promises on its part" as required by the agreement.  *Am. Compl.*, ¶ 30.

Defendant Meritain allowed its clients to access Plaintiff's network without including Plaintiff's name on an EOB or paying Plaintiff a fee under the agreement on many occasions, including the following: (1) "On November 23, 2005, Meritain sent an EOB to a provider, Medical Anesthesia Associates, in Liberty, Texas which included a discount taken through the TRPN agreement, but placed GCR on the EOB, thereby misidentifying the source of the discount and depriving [Plaintiff] of its fee for the same."  (2) "On July 20, 2006, Meritain sent an EOB which did not include [Plaintiff's] name to a provider in Pine Hill, North Carolina, Greensboro Anesthesia Physicians, despite the fact that [Plaintiff] provided the discount through its network."  (3) "In September, 2005, Meritain sent an EOB to a provider, Children's Critical Care Association, with national locations throughout the United States, an EOB which omitted the TRPN/affiliate reference and thereby misled the provider and [Plaintiff] with respect to the source of the discount and deprived [Plaintiff] of its fee."  (4) "In May, 2005, Meritain sent an EOB to a provider, Alexander Swistel, in New York which misidentified the source of the discount taken by stating it was through an entity other than [Plaintiff] or [an affiliate of Plaintiff]." *Am. Compl.*, ¶¶ 13-16.  Plaintiff has discovered hundreds of instances where Defendant Meritain has failed to properly identify Plaintiff on EOB forms, however, Plaintiff alleges that those instances represent only "a fraction of the actual claims on which [Defendant] Meritain omitted the TRPN/affiliate name on the EOB." *Am. Compl.*, ¶ 17.

"[Defendant] Meritain's wholly owned [subsidiary]," CBSA, also "improperly accessed" Plaintiff's network without reporting its use or compensating Plaintiff under the contract. *Am. Compl.*, ¶ 22.  Defendant Joseph Coffey, Director of Cost Management Strategies at CBSA, instructed "a CBSA employee, Albert Perez, to use [Plaintiff's discount] rate without identifying [Plaintiff] on the EOB and without reporting the discounts taken to [Plaintiff]." *Am. Compl.*, ¶ 22.  Coffey "later admitted" that CBSA had "accessed [Plaintiff's] network and discounts in a way which was unauthorized and violated Silent PPO laws and that CBSA was not entitled to the discounts taken."

*Am. Compl.*, ¶ 22.  Coffey agreed to "set up direct and proper access" to Plaintiff's network, however, Coffey never followed through in setting up proper access, and "CBSA continues to this day" to access Plaintiff's network improperly and without authorization.  *Am. Compl.*, ¶ 22.  Coffey made misrepresentations to Plaintiff to ensure that Plaintiff would continue to work with CBSA, and "CBSA continued its unauthorized access [to Plaintiff's network] even following [CBSA's] acquisition by [Defendant] Meritain."  *Am. Compl.*, ¶ 40.

Plaintiff alleges that "Defendants intentionally omitted or misidentified the data on the EOB forms so that [Plaintiff] would not discover Defendants' scheme to avail themselves and their clients of discounts through [Plaintiff's] network without paying the contract fee for those discounts."  *Am. Compl.*, ¶ 17.  Plaintiff further alleges that Defendants "knew that the statements on the EOBs naming someone other than [Plaintiff] were false when made," and were done as part of Defendants' "plan to defraud" and "mislead" Plaintiff.  *Am. Compl.*, ¶ 18.  As a result of the intentional misrepresentations, Plaintiff "has been damaged by providing [Defendant] Meritain's clients with more than . . . $20 million worth of discounts."  *Am. Compl.*, ¶ 35.

In and around December of 2005, Plaintiff and Defendant Meritain "entered into negotiations regarding a new contract between them," which "would have foreclosed many of the issues" raised in the Amended Complaint.  *Am. Compl.*, ¶ 36.  After a draft agreement was sent to Defendant Meritain courtesy of Defendant Christine Calarco, Calarco telephoned Plaintiff's President to inform Plaintiff that Defendant Meritain agreed to the contract.  *Am. Compl.*, ¶ 36.  Calarco further informed Plaintiff that the draft agreement had been signed and "was in the mail back to Plaintiff."  *Am. Compl.*, ¶ 36.  In reliance on this information, Plaintiff sent Defendant Meritain Plaintiff's new discount rates and allowed Defendant Meritain to continue to use Plaintiff's network.  *Am. Compl.*, ¶¶ 36-37.  Plaintiff later learned that neither Defendant Meritain nor Defendant Calarco had signed the draft agreement, and that the draft agreement had not been mailed to Plaintiff.  *Am. Compl.*, ¶¶ 36-37.  Plaintiff alleges that "Calarco knew that the contract had not been signed nor sent and made the misrepresentations with the intent to induce [Plaintiff] to rely on the misrepresentations."  *Am. Compl.*, ¶ 36.

In addition to Defendant Meritain's failure to properly identify Plaintiff or one of Plaintiff's

affiliates on EOBs, Defendant Meritain "began to intentionally miscalculate the amount of fees owed to [Plaintiff] under the contract." *Am. Compl.*, ¶ 19. "The contract, which was never modified orally or in writing to change the fee due to [Plaintiff], called for [Defendant] Meritain to pay [Plaintiff] 10% of the savings received by Meritain, but Meritain instead began to send [Plaintiff] access fees representing only 8% of savings." *Am. Compl.*, ¶ 19. By the time Plaintiff discovered Defendant Meritain's underpayment, "Meritain had underpaid [Plaintiff] in the amount of $95,000.00." *Am. Compl.*, ¶ 19. Defendant Meritain refuses to pay Plaintiff the $95,000.000 owed. *Am. Compl.*, ¶ 19.

Defendant Meritain collects administrative fees from vendors such as Plaintiff, as well as from Defendant Meritain's clients. *Am. Compl.*, ¶ 23. Plaintiff alleges that Defendant Meritain collects these administrative fees without relation to the costs incurred by Defendant Meritain. *Am. Compl.*, ¶ 23. Defendant Meritain "essentially [collects] twice" for the same administrative costs. *Am. Compl.*, ¶ 23.

Plaintiff paid an administrative fee of $7,000.00 per/month for ten (10) months to Defendant Meritain because Plaintiff believed that the fee entitled Plaintiff to "maintain [its] relative vendor" position with Defendant Meritain. *Am. Compl.*, ¶ 24. Plaintiff was not aware that "the administrative fees were not justified by actual costs or that Meritain was also charging the same fees to Meritain's clients/employer groups." *Am. Compl.*, ¶ 24. Despite paying administrative fees for ten (10) months, Plaintiff discovered that it "had lost its relative vendor position with Meritain." *Am. Compl.*, ¶ 24. "Defendants used the United States Mail service to send invoices" to Plaintiff for the administrative fee. *Am. Compl.*, ¶ 26.

Defendants Calarco, Coffey, and Meritain, as well as Meritain's officers, agents, clients, vendors, and employees, "associated together in fact for the common purpose of carrying out the fraudulent scheme described," "namely, converting [Plaintiff's] discount network by, among other things, obscuring the nature and amount of access Meritain and Meritain's clients and vendors had to the discounts and the amount due from Meritain to [Plaintiff] for such access, while charging [Plaintiff] and others unwarranted administrative fees and underpaying the percentage due under the contract." *Am. Compl.*, ¶ 54. Defendants' association in fact constitutes an enterprise within the meaning of the RICO statutes. *Am. Compl.*, ¶ 54. Defendants participated in the conduct of the

enterprise "through a pattern of racketeering activity." *Am. Compl.*, ¶ 57. Defendant Meritain participated in the operation or management of the enterprise by "creating or supervising the creation of the EOBs which contain the misrepresentations as to the source of the discounts, initiating and collecting unwarranted administrative fees and misleading others as to the actual administrative costs incurred," among other things. *Am. Compl.*, ¶ 57. Defendant Calarco participated in the operation of the enterprise by "creating or supervising the creation of the fraudulent EOBs, . . . invoicing and collecting the fraudulent administrative fees, granting access to [Plaintiff's] network to Meritain's clients without payment, and taking various other steps to help Meritain hide the unauthorized access from [Plaintiff]." *Am. Compl.*, ¶ 57. Defendant Coffey participated in the operation or management of the enterprise by "creating or supervising the creation of fraudulent EOBs" which contain misrepresentations as to the source of the discounts, and intentionally misleading [Plaintiff] as to (a) who had access to [Plaintiff's network], and (b) how much money was owed to CBSA. *Am. Compl.*, ¶ 57.

Defendants' "pattern of racketeering activity" consisted of "Defendants' aiding and abetting the commission of countless acts of mail and/or wire fraud." *Am. Compl.*, ¶ 58. Specifically, Defendants "transmitted, or caused to be transmitted by means of wire communication," or through the use of the mails, the following misleading or fraudulent communications, among others:

a) On October 28, 2004, by utilizing the United States mail and/or United States wires in forwarding correspondence and attached EOB from Defendant Meritain to Minnesota Epilepsy Group in furtherance of Defendants' scheme, with the specific intent to deceive and defraud [Plaintiff] with respect to the omission of [Plaintiff's] name from that document;

b) On November 23, 2005, by utilizing the United States mail and/or United States wires in forwarding correspondence and attached EOB from Defendant Meritain to Medical Anesthesia Associates in furtherance of Defendants' scheme, with the specific intent to deceive and defraud [Plaintiff] regarding the omission of [Plaintiff's name] from the EOB document;

c) In September, 2005, by utilizing the United States mail and/or United States wires in forwarding correspondence and attached EOB from Defendant Meritain to Children's Critical Care Association in furtherance of Defendants' scheme, with the specific intent to deceive and defraud [Plaintiff] regarding the omission of [Plaintiff's] name from the EOB document;

. . .

f) On a monthly basis between January and October inclusive of 2005, by utilizing the United States mail and/or United States wires in forwarding correspondence and

attached invoicing from Defendant Meritain to [Plaintiff], in furtherance of Defendants' scheme, with the specific intent to deceive and defraud [Plaintiff] regarding the unwarranted administrative fees . . . .

*Am. Compl.*, ¶ 59. Defendants "have used and invested proceeds derived from their activities to acquire, or attempt to acquire, and to operate Defendants' racketeering enterprise." *Am. Compl.*, ¶ 61. For example, "Defendants used and invested the proceeds derived from their illegal activities to acquire CBSA, now a wholly owned subsidiary of Meritain." *Am. Compl.*, ¶ 61. Defendants have wrongfully acquired, or purported to acquire, "Plaintiff's interest in the right to the profit derived from [Plaintiff's network] through the pattern of racketeering activity." *Am. Compl.*, ¶ 62. Defendants have conducted, or participated–directly or indirectly–"in the conduct and maintenance of the racketeering enterprise." *Am. Compl.*, ¶ 63. In addition, Defendants have "agreed and conspired with each other" to perpetrate the acts alleged, and have "participated in the scheme knowingly, willfully, and with the specific intent to defraud [Plaintiff] in furtherance of the agreed upon plan to commit the alleged predicate acts and to advance and further their scheme." *Am. Compl.*, ¶ 64.

As a result of Defendants' racketeering activity, Plaintiff has suffered economic injury in excess of $20 million. *Am. Compl.*, ¶ 66.

## STANDARDS OF REVIEW

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the pleadings. *De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir. 1978). A complaint may be dismissed for failure to state a claim under Rule 12(b)(6) where the factual allegations do not raise the "right to relief above the speculative level." *Bell Atlantic v. Twombly*, 127 S. Ct. 1955, 1965 (2007). Conversely, a complaint may not be dismissed for failure to state a claim where the allegations plausibly show "that the pleader is entitled to relief." *Id.* (citing FED. R. CIV. P. 8(a)(2)). In ruling on a motion pursuant to Rule 12(b)(6), a court must construe the pleadings in the light most favorable to the plaintiff, and further, must accept as true all material allegations in the complaint, as well as any reasonable inferences to be drawn therefrom. *See Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003), *see also Chang v. Chen*, 80 F.3d 1293 (9th Cir. 1996). In considering a Rule 12(b)(6) dismissal, a court may not look beyond the complaint. *Moore v. Costa Mesa*, 886 F.2d 260, 262 (9th Cir. 1989).

On a motion to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the

burden of establishing personal jurisdiction. *Farmers Ins. Exchange v. Portage La Prarie Mut. Ins. Co.,* 907 F.2d 911, 912 (9th Cir. 1990). Where the motion to dismiss is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to satisfy this burden. *Dole Food Co. v. Watts,* 303 F.3d 1104, 1108 (9th Cir. 2002). While the plaintiff cannot "simply rest on the bare allegations of its complaint," *Amba Marketing Systems, Inc. v. Jobar Int'l, Inc.,* 551 F.2d 784, 787 (9th Cir. 1977), uncontroverted allegations in the complaint must be taken as true. *AT&T v. Campagnie Bruxelles Lambert,* 94 F.3d 586, 588 (9th Cir. 1996). Conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor. *Id.*; *see also Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.,* 223 F.3d 1082, 1087 (9th Cir. 2000) ("Because the prima facie jurisdictional analysis requires us to accept the plaintiff's allegations as true, we must adopt [the plaintiff's] version of events for purposes of this appeal."). "[I]f a plaintiff's proof is limited to written materials, it is necessary only for these materials to demonstrate facts which support a finding of jurisdiction in order to avoid a motion to dismiss." *Data Disc, Inc. v. Systems Technology Associates, Inc.,* 557 F.2d 1280, 1285 (9th Cir. 1977).

## DISCUSSION

**I. Defendants' Motion to Dismiss For Failure to State a Claim (Doc. # 22)**

Plaintiff's First Amended Complaint asserts claims for breach of contract, fraud, conversion, and RICO violations. (Doc. # 14). Defendants' motion to dismiss seeks dismissal of Plaintiff's fraud, conversion, and RICO claims in their entirety. Defendants' motion to dismiss seeks dismissal of Plaintiff's contract claim as to Defendants Calarco and Coffey.

### A. Conversion

Plaintiff alleges that Defendants converted Plaintiff's ownership interest in the discounts Plaintiff negotiated with health care providers when Defendants omitted Plaintiff's name on EOBs and submitted those EOBs to health care providers. Defendants contend that Plaintiff's conversion claim should be dismissed because Plaintiff does not have an ownership interest in the discounts Plaintiff negotiated with health care providers and because Plaintiff has not alleged specific damages. Plaintiff contends that the claim should not be dismissed because Plaintiff has sufficiently pled an ownership interest in the discounts Plaintiff negotiated with health care providers.

"Conversion is the wrongful exercise of dominion over the property of another." *Burlesci v. Peterson*, 68 Cal. App. 4th 1062, 1066 (1998).  In order to state a claim for conversion, a plaintiff must allege "(1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." *Id*.; *see also PCO, Inc. v. Christensen*, 150 Cal. App. 4th 384, 395 (2007).  "It is not necessary that there be a manual taking of the property; it is only necessary to show an assumption of control or ownership over the property, or that the alleged converter has applied the property to his own use." *Farmers Ins. Exchange v. Zerin*, 53 Cal. App. 4th 445, 451-452 (1997); *see also Hartford Financial Corp. v. Burns*, 96 Cal. App. 3d 591, 598 (1979).  Neither legal title nor absolute ownership of the property by the plaintiff is necessary to state a claim for conversion.  *Id.* at 452.

The First Amended Complaint alleges that Plaintiff negotiated exclusive health care discounts with health care providers, and that Plaintiff owns or possesses an ownership interest in those discounts.  The First Amended Complaint alleges that Defendants wrongfully converted those discounts by using the discounts for Defendants' benefit without identifying Plaintiff on EOB forms which damaged Plaintiff in an amount believed to exceed $20 million.

Defendants contend that Plaintiff's conversion claim fails as a matter of law because Plaintiff's allegations with respect to an ownership interest in the discounts are conclusory.  However, FED. R. CIV. P. 8(a) requires only a short plain statement of the claims asserted, and the Court concludes that Plaintiff has adequately alleged an ownership interest in the discounts from the health care providers.  The Court finds that Plaintiff's allegations that it had exclusive access and possession of discounts plausibly entitle Plaintiff to recover for conversion.  The Court finds that Plaintiff has adequately alleged that Defendants have "applied the property to [their] own use" and that Plaintiff has suffered damages. *Farmers Ins. Exchange*, 53 Cal. App. 4th at 451-52.

The Court finds that Plaintiff has properly alleged each element of a claim for conversion. Accordingly, Defendants motion to dismiss Plaintiff's claim for conversion is DENIED.

**B.  Fraud**

Plaintiff alleges that Defendants are liable for fraud as follows.  Plaintiff alleges that Defendant Meritain is liable for fraud because Meritain intentionally omitted Plaintiff's name from EOBs in order

to avoid paying Plaintiff a contractual fee. Plaintiff further alleges that Meritain misrepresented to Plaintiff that if Plaintiff paid an administrative fee Plaintiff would retain its relative vendor position with respect to Meritain's list of vendors. Plaintiff alleges that Defendant Calarco is liable for fraud because Calarco intentionally misrepresented that a contract had been signed and thereby induced Plaintiff into sending rates to Calarco and allowing Defendants Calarco and Meritain to access Plaintiff's network of discounts. Plaintiff further alleges that Calarco created or supervised the creation of fraudulent EOBs. Plaintiff alleges that Defendant Coffey is liable for fraud because Coffey misrepresented his intention to stop improperly accessing Plaintiff's network of discounts so that Plaintiff would believe that the improper access would stop and continue working with CBSA, a company with which Coffey was associated.

Defendants contend that Plaintiff's fraud claims should be dismissed because they lack the requisite particularity required by FED. R. CIV. P. 9(b). Defendants further contend that the allegations fail to put Defendants on notice of the claims against them because the allegations are conclusory.

In order to state a claim for fraud under California law, a plaintiff must allege (1) a false representation, (2) knowledge of the falsity of the representation, (3) intent to defraud, (4) justifiable reliance, and (5) damages. *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1005 (9th Cir. 2003); *see also Maganallez v. Hilltop Lending Corp.*, 505 F. Supp. 2d 594, 605 (N.D. Cal. 2007); *Conrad v. Bank of America*, 45 Cal. App. 4th 133, 156 (1996). Fraud claims are subject to FED. R. CIV. P. 9(b), which requires that "the circumstances constituting fraud" be alleged with "particularity." *See also Vess*, 317 F.3d at 1103. The purpose of the particularity requirement is to protect persons from unwarranted or undeserved "reputational harm" that stems from fraud allegations. *Id*. at 1104.

To satisfy FED. R. CIV. P. 9(b)'s "particularity" requirement, allegations of fraud must include "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG*, 476 F.3d 756, 763 (9th Cir. 2007). In other words, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess*, 317 F.3d at 1106 (internal citations omitted). "To comply with [FED. R. CIV. P. 9(b)], allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against

the charge and not just deny that they have done anything wrong." *Swartz*, 476 F.3d at 764.  Where fraud is alleged against multiple defendants, "a plaintiff must, at a minimum, identify the role of each defendant in the alleged fraudulent scheme."  *Id*. (internal citations and quotations omitted).

   1.  Meritain

   Plaintiff alleges that Plaintiff had exclusive contracts with health care providers which allowed Plaintiff and its clients access to discounts on health care.  Plaintiff alleges that it contracted with Meritain to provide Meritain access to Plaintiff's network of discounts, and that Meritain agreed to list Plaintiff or one of Plaintiff's affiliates on any EOB.  Plaintiff alleges that Meritain intentionally omitted Plaintiff's name from EOBs in numerous instances as part of Meritain's plan to defraud Plaintiff.  The Complaint details five specific instances in which Meritain intentionally omitted Plaintiff's name from an EOB so that Meritain or Meritain's clients could access Plaintiff's network of discounts, which instances occurred on October 28, 2004, November 23, 2005, July 20, 2006, September, 2005, and May, 2005.  Plaintiff alleges the name of each provider to which Defendant Meritain sent the above fraudulent EOBs.  Plaintiff alleges that the contract between Plaintiff and Defendant Meritain required Meritain to pay a fee based on the total amount of savings Meritain or Meritain's clients earned as a result of access to Plaintiff's discounts.  Plaintiff alleges that it justifiably relied on the EOBs created by Meritain, as well as on Meritain's representation that Meritain would list Plaintiff on EOBs.  Plaintiff alleges that it has suffered damages as a result of Meritain's fraudulent conduct.

   Meritain contends that Plaintiff's allegations of fraud fail because they lack sufficient particularity.  Specifically, Meritain contends that the allegations fail to allege the specific content of the alleged misrepresentations, and further fail to allege justifiable reliance.

   Of the five specific instances of fraud alleged to have been perpetrated by Meritain, two instances describe how Defendant Meritain listed "Global Claims Resources," or GCR, as the source of the discount on the EOB instead of Plaintiff.  *Am. Compl.*, ¶¶ 12-13.  Two other instances allege that Defendants simply omitted any reference to the source of the discount.  *Am. Compl.*, ¶¶ 14-15.  Finally, in one instance, Plaintiff alleges that Defendant Meritain misidentified the source of the discount by listing an entity other than Plaintiff or one of Plaintiff's affiliates, however, Plaintiff does

not specifically allege the name of the other entity. *Am. Compl.*, ¶ 16.  The Court finds that Plaintiff's allegations include the specific content of the alleged misrepresentations by either identifying the name of the entity Meritain used in lieu of Plaintiff's name, or by alleging that Meritain attempted to use Plaintiff's network of discounts without referencing any entity on EOBs as the source of the discount.  Defendant Meritain appears to contend that the only manner in which Plaintiff could adequately allege fraud under the scenario presented is for Plaintiff to attach each of the offending EOBs to the Complaint.  However, the particularity requirement in FED. R. CIV. P. 9(b) must be read in "harmony" with the principles of notice pleading described in FED. R. CIV. P. 8(a), *see BJC Health System v. Columbia Casualty Co.*, 478 F.3d 908, 917 (8th Cir. 2007), and the Court finds that Plaintiff has adequately alleged the content of the offending EOBs under the circumstances.

Defendant Meritain contends that Plaintiff's allegations fail to allege Plaintiff's justifiable reliance on Meritain's allegedly fraudulent misrepresentations.  Plaintiff's allegations detail a scheme in which Meritain's obligation to list Plaintiff's name on EOBs was a key requirement because it enabled Plaintiff to track fees owed by Meritain to Plaintiff.  Meritain contends that justifiable reliance is lacking because Meritain made the misrepresentations to third party health care providers, and not directly to Plaintiff.  The Court finds, however, that Plaintiff was entitled to rely on representations Meritain made on EOBs, because without such reliance and reference to those EOBs, Plaintiff would be unable to bill Meritain correctly for access to Plaintiff's discounts.  The Court finds that the Amended Complaint alleges that the agreement between Plaintiff and Meritain contemplated Plaintiff's reliance on EOBs sent to health care providers, and that as a result of the agreement, both parties knew that Plaintiff would be relying on those EOBs.  Based upon the alleged contract between Plaintiff and Meritain–specifically the contractual fee provisions–Defendant Meritain "had reason to expect" that any false representation made to a health care provider would be communicated to Plaintiff under the facts alleged. *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1095 (1993).

To adequately plead fraud with particularity, a plaintiff must allege "an account of the time, place, and specific content of the false representations, as well as the identities of the parties to the misrepresentations." *Swartz*, 476 F.3d at 763; *see also Vess*, 317 F.3d at 1106.  The Court finds that Plaintiff has adequately alleged with particularity fraud on the part of Meritain.  In addition, the Court

finds that Plaintiff's allegations of fraud are "specific enough" to give Defendant Meritain "notice of the particular misconduct which is alleged to constitute the fraud charged" so that Meritain can defend against the charge and not just deny that it did anything wrong.  *Swartz*, 476 F.3d at 764.

Defendant Meritain's motion to dismiss the fraud claim against it is DENIED.

### 2.  Calarco

Plaintiff alleges that Defendant Christine Calarco represented Defendant Meritain in contractual negotiations in December, 2005.  Plaintiff alleges that a draft agreement was created and sent to Calarco for approval and signature on December 1, 2005.  Plaintiff alleges that thereafter Defendant Calarco left a detailed message on the voicemail of Plaintiff's President in which Calarco stated that Meritain agreed to the contract, and indicated that the contract had been signed and placed in the mail back to Plaintiff.  Plaintiff alleges that neither Calarco nor Meritain signed the draft agreement, and that Calarco intentionally misrepresented the fact that the agreement had been signed and was in the mail to induce Plaintiff into sending Meritain its new rates and allowing Meritain to access Plaintiff's network of discounts.  Plaintiff alleges that it justifiably relied on Calarco's representations in sending Meritain the new rates and allowing Meritain access to discounts after December, 2005.

Defendant Calarco contends that these allegations are "frivolous," and notes that even if they were true, Plaintiff should have realized the contract was not signed or in the mail after a short period. (Doc. # 22-2 at 14).  After reviewing the allegations, however, the Court finds that Plaintiff has adequately alleged fraud with particularity against Calarco.  Though Calarco questions how long Plaintiff may have relied on the misrepresentations, there is no doubt that Plaintiff has alleged justifiable reliance in the first instance.  Plaintiff has alleged the date of the misrepresentations, the identities of the parties, why the representations were made, how and why Plaintiff relied on the misrepresentations, and other circumstances surrounding the communications.  The Court concludes that Plaintiff has properly stated a fraud claim against Calarco.

Defendant Calarco's motion to dismiss the fraud claim is DENIED.

### 3.  Coffey

Plaintiff alleges that Defendant Coffey is Director of Cost Management at CBSA, a wholly

owned subsidiary of Defendant Meritain.  Plaintiff alleges that Coffey instructed a CBSA employee, Albert Perez, to use Plaintiff's discount rate without identifying Plaintiff on the EOB.  Plaintiff alleges that Plaintiff sent its general counsel to meet with Coffey with respect to this behavior, and that during that meeting Coffey admitted improperly taking discounts, and agreed to make arrangements to set up proper access to Plaintiff's network of discounts.  Plaintiff alleges that Coffey entered into an arrangement with Plaintiff for access to Plaintiff's network of discounts, but that Coffey did not intend to abide by the agreement.

Plaintiff adequately alleges when Coffey made the alleged misrepresentations (October, 2006), and to whom the misrepresentations were made (Plaintiff's general counsel).  In addition, Plaintiff alleges that Coffey misrepresented the fact that he would ensure that CBSA would start properly accessing Plaintiff's network of discounts in order to induce Plaintiff into continuing to work with CBSA.  Plaintiff alleges that it relied upon Coffey's representations by continuing to work with CBSA and cutting short its investigation of CBSA's improper accessing activities.  The Court finds that Plaintiff has alleged that Defendant Coffey intentionally misrepresented that he would ensure that CBSA properly accessed Plaintiff's network of discounts, and that Plaintiff suffered damages as a result of its justifiable reliance on Coffey's representations.  The Court further finds that Plaintiff has alleged fraud with sufficient particularity so as to give Defendant Coffey notice of the particular misconduct alleged.  *See Swartz*, 476 F.3d at 764.

Defendant Coffey's motion to dismiss the fraud claim against him is DENIED.

**C.  Rico Violations**

Plaintiff contends that Defendants Meritain, Calarco, and Coffey associated together in fact to carry on a scheme to defraud Plaintiff out of fees and convert Plaintiff's network of discounts while charging unwarranted administrative fees.  Plaintiff alleges violations of 18 U.S.C. §§ 1962(a), 1962(b), and 1962(c).

1.  Plaintiff's Claim Pursuant to 18 U.S.C. § 1962(a)

Plaintiff alleges that Defendants have "used and invested proceeds derived from their activities to acquire, or attempt to acquire, and to operate Defendants' racketeering enterprise," including investing racketeering proceeds to acquire CBSA, in violation of 18 U.S.C. § 1962(a).  *Am. Compl.*,

¶ 61.

18 U.S.C. § 1962(a) provides in pertinent part that,

(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of any unlawful debt in which such person has participated as a principal . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

In order to state a claim under 18 U.S.C. § 1962(a), a plaintiff must allege "facts tending to show that he or she was injured by the use or investment of racketeering income." *Wagh v. Metris Direct*, 348 F.3d 1102, 1109 (9th Cir. 2003) (citing *Nugget Hydroelectric v. PG&E*, 981 F.2d 429, 437 (9th Cir. 1992)). "[A]llegations of reinvestment of funds into a RICO enterprise, standing alone, are insufficient to demonstrate investment injury" as required for a violation of 18 U.S.C. § 1962(a). *City & County of San Francisco v. Spencer*, No. C 02-5086 PJH, 2003 U.S. Dist. LEXIS 23422 (N.D. Cal. Dec. 19, 2003) (citing *Wagh*, 348 F.3d at 1110). To be actionable under § 1962(a), an injury from reinvestment of racketeering proceeds must be "separate and distinct" from any injury flowing from predicate acts. *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1149-50 (9th Cir. 2008).

Plaintiff alleges that Defendants used proceeds or income derived from racketeering activities to continue to operate the enterprise and to acquire portions of the enterprise. The Court concludes, however, that Plaintiff's allegations of injury caused by the reinvestment of racketeering proceeds are not sufficient to state a claim under 18 U.S.C. § 1962(a). *See Wagh*, 348 F.3d at 1110. Aside from allegations of reinvestment, the Amended Complaint does not allege exactly how Defendants' use of alleged racketeering income injured Plaintiff in any manner. As Plaintiff has not alleged more than that reinvestment of racketeering proceeds caused Plaintiff injury, Plaintiff's claim under 18 U.S.C. § 1962(a) is hereby dismissed without prejudice.

2.  Plaintiff's claim pursuant to 18 U.S.C. § 1962(b)

Plaintiff alleges that Defendants violated 18 U.S.C. § 1962(b) by wrongfully acquiring Plaintiff's interest in the "right to profit from the TRPN network" through a pattern of racketeering. (Doc. # 14 at 18-19).

18 U.S.C. § 1962(b) provides, that it is "unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or

indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."  In order to state a claim for violation of 18 U.S.C. § 1962(b), a plaintiff must allege that, "(1) the defendant's activity led to its control or acquisition over a RICO enterprise, and (2) an injury to plaintiff resulting from defendant's control or acquisition of a RICO enterprise."  *Wagh*, 348 F.3d 1102 (citing *Sebastian Int'l, Inc. v. Russolillo*, 186 F. Supp. 2d 1055, 1068 (C.D. Cal. 2000)).

Plaintiff alleges that Defendants Meritain, Calarco, and Coffey banded together to create an associated in fact enterprise.  In the alternative, Plaintiff alleges that CBSA was the enterprise, and was controlled by Defendants.  Plaintiff alleges that it was injured when Defendants defrauded Plaintiff and converted Plaintiff's network of discounts.  With respect to 18 U.S.C. § 1962(b), the Court concludes that Plaintiff has failed to allege that Defendants' acquisition or control of the alleged enterprise injured Plaintiff.  To be sure, Plaintiff alleges that Defendants' alleged pattern of racketeering caused Plaintiff injury.  However, in order to state a claim for violation of 18 U.S.C. § 1962(b), Plaintiff has to allege that Defendants' acquisition or control of the enterprise injured Plaintiff separate and apart from any injury resulting from the alleged pattern of racketeering.  *See U.S. Concord v. Harris Graphics Corp.*, 757 F. Supp. 1053, 1061 (N.D. Cal. 1991).  The Amended Complaint does not allege an injury from Defendants acquisition or control of an enterprise.  *See U.S. Concord*, 757 F. Supp. at 1060 (noting example of how acquisition or control of an enterprise could cause injury, specifically, that an owner of an enterprise infiltrated as a result of racketeering activity could assert injury because of a defendant's acquisition of the enterprise and Plaintiff's loss of control).

Plaintiff's claim for violation of 18 U.S.C. § 1962(b) is hereby DISMISSED.

3.  Plaintiff's claim for violation of 18 U.S.C. § 1962 (c)

Plaintiff allege that Defendants participated in the conduct of an enterprise and thereby violated 18 U.S.C. § 1962(c).

Section 1962(c) prohibits "any person employed by or associated with any enterprise" from "conduct[ing] or [participating], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ."  18 U.S.C. § 1962(c).  In order to state a claim under

18 U.S.C. § 1962(c), a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Odom*, 486 F.3d at 547 (citing *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985)).

The Amended Complaint alleges that numerous Defendants led an unlawful enterprise which defrauded Plaintiff by creating false and misleading EOBs, intentionally and improperly accessing Plaintiff's network of health care discounts, failing to pay contractual access fees, and overcharging Plaintiff for administrative fees. The Amended Complaint further alleges that the improper conduct began in and around 2004 and continues today, and that during that time Defendants have committed more than two acts of racketeering, including at least mail and wire fraud.

### a. Conduct, Control & a Pattern of Racketeering

After reviewing the allegations, the Court concludes that Plaintiff has adequately alleged conduct and a pattern of racketeering activity on the part of Defendants. The Amended Complaint alleges that Defendants participated in the conduct and control of the alleged enterprise, and the Court finds that the allegations allege that Defendants committed more than two predicate acts of mail and/or wire fraud. The Court finds that the predicate acts are pleaded with sufficiently particularity in compliance with FED. R. CIV. P. 9(b). Though the alleged predicate acts of mail and/or wire fraud do not involve each of the Defendants in each instance, the Court finds that the allegations plausibly allege that each Defendant would have or should have known, and indeed should have expected, that the alleged acts of mail or wire fraud would occur, and thus each Defendant could plausibly be liable for each predicate act allegd. *See United States v. Kuzniar*, 881 F.2d 466, 472 (7th Cir. 1989) (citing *Pereira v. United States*, 347 U.S. 1, 8-9 (1954); *see also R.F. Davis Chemical Corp. v. Nalco Chemical Corp.*, 757 F. Supp. 1499, 1512-13 (N.D. Ill. 1990).

### b. Enterprise

The question remains whether the Amended Complaint adequately alleges an enterprise, and more specifically here, an associated-in-fact enterprise. An associated-in-fact enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct." *Odom*, 486 F.3d at 552; *Turkette*, 452 U.S. at 583. To establish the existence of an associated-in-fact enterprise, a plaintiff must allege (1) persons associated for the "common purpose of engaging in a course of

conduct," (2) "an ongoing organization, formal or informal," and (3) that the associates functioned as a "continuing unit." *Odom*, 486 F.3d at 552. RICO and § 1962(c)'s enterprise element are to be read broadly. *Id.* at 547. A plaintiff which alleges an associated-in-fact enterprise does not need to allege that the enterprise has a "particular organizational structure, separate or otherwise." *Id.* at 551.

### i. Common Purpose

Plaintiff alleges that Defendants Meritain, Calarco, Coffey, in conjunction with nonparties CBSA and other clients and vendors of Meritain, associated together to defraud Plaintiff out of fees and convert Plaintiff's network of discounts. Plaintiff further alleges that Defendants benefitted from their participation in the scheme to Plaintiff's detriment. The Court concludes that these allegations sufficiently allege Defendants associated together for the common purpose of defrauding Plaintiff. *See Odom*, 486 F.3d at 552.

### ii. Ongoing Organization

"An ongoing organization is 'a vehicle for the commission of two or more predicate crimes.'" *Odom*, 486 F.3d at 552 (citing *United States v. Cagnina*, 697 F.2d 915, 921-22 (11th Cir. 1983)).

Plaintiff alleges that Defendant Meritain intentionally omitted Plaintiff's name from EOBs with the intent to defraud Plaintiff, and further, that Meritain intentionally underpaid Plaintiff fees owed to Plaintiff, and intentionally overcharged Plaintiff for administrative fees. Plaintiff alleges that Defendant Calarco participated in the enterprise by assisting in the creation of the false EOBs and by inducing Plaintiff into sending Meritain Plaintiff's rates and continuing to allow Meritain access to Plaintiff's network of discounts. Plaintiff alleges that Defendant Coffey created false EOBs and assisted in Meritain's acquisition of CBSA. The Court concludes that these allegations sufficiently allege an ongoing organization created to commit and facilitate at least two predicate acts. *See Odom*, 486 F.3d at 552.

### iii. Continuing Unit

*Odom* and *Turkette* require that a properly pled enterprise include allegations that "the various associates function as a continuing unit." *Odom*, 486 F.3d at 552 (citing *Turkette*, 452 U.S. at 583). The continuity requirement does not require that every member of the enterprise be involved in each of the underlying acts of racketeering. *Odom*, 486 F.3d at 552. "Instead, the continuity requirement

focuses on whether the associates' behavior was 'ongoing' rather than isolated activity." *Odom*, 486 F.3d at 553 (citing *United States v. Patrick*, 248 F.3d 11, 19 (1st Cir. 2001)).

Plaintiffs allege that the enterprise's activity (including creating fraudulent EOBs, inducing Plaintiff to continue working with Meritain after questions of improper access first arose, and Meritain's acquiring of CBSA to assist with the scheme) began in and around 2004 and continues today. As noted in *Odom*, a two-year span "is far more than adequate" to establish a continuing unit. *Odom*, 486 F.3d at 553. Accordingly, the Court concludes that Plaintiffs have alleged sufficient facts to constitute the continuing unit requirement.

The Court concludes that Plaintiff has adequately alleged an enterprise involving each of the Defendants as well as other nonparties. In light of the Court's previous conclusion that Plaintiffs adequately alleged conduct and a pattern of racketeering activity, the Court concludes that Plaintiffs have alleged sufficient facts to properly state a claim for violation of 18 U.S.C. § 1962(c) against each Defendant.

**D. Plaintiff's Breach of Contract Claims against Calarco and Coffey**

Plaintiff alleges that Plaintiff and Defendant Meritain entered into a written contract on June 4, 2004. The Amended Complaint asserts a breach of contract claim against Defendants Meritain, Calarco, and Coffey based upon the contract of June 4, 2004.

Defendants Coffey and Calarco contend that Plaintiff's breach of contract claim should be dismissed with respect to Coffey and Calarco because neither Coffey nor Calarco signed the written contract or was a party to the written contract. *See Am. Compl.*, Ex. 1. After reviewing the contract and the moving papers, the Court concludes that neither Coffey nor Calarco signed the written contract, and there are no allegations which would indicate that either Coffey or Calarco were parties to the contract in their individual capacities. Accordingly, the breach of contract claims against Defendants Calarco and Coffey are hereby DISMISSED.

**II. Calarco and Coffey's Motion to Dismiss For Lack of Personal Jurisdiction (Doc. # 21)**

Defendants Calarco and Coffey contend that they must be dismissed from this suit because the Court lacks personal jurisdiction. Defendants contend that they are not citizens of the State of California, and do not have sufficient minimum contacts with the State to justify the exercise of

personal jurisdiction in this suit.

Plaintiff contends that Defendants Calarco and Coffey are subject to personal jurisdiction vis-a-vis RICO's provisions for nationwide service of process.  In addition, Plaintiff contends that it has stated claims for and submitted evidence that Defendants are liable for intentional torts, and that such a showing is sufficient for personal jurisdiction.  In the alternative, Plaintiff requests an opportunity to conduct jurisdictional discovery with respect to Defendants Calarco and Coffey.

**A.  Specific Personal Jurisdiction**

Pursuant to California's long arm statute, CAL. CODE CIV. P. § 410.10, a federal district court in California can exercise specific personal jurisdiction in all instances which would not violate due process. *Butcher's Union Local No. 498 v. SDC Investment*, 788 F.2d 535, 539 (9th Cir. 1986); *Fred Martin Motor Co.*, 374 F.3d at 800-01.  "For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Fred Martin Motor Co*, 364 F.3d at 801 (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  The Court of Appeals for the Ninth Circuit employs a three-prong test for analyzing a claim of specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Fred Martin Motor Co.*, 364 F.3d at 802.  The plaintiff bears the burden of establishing the first two prongs, and if she does so, the burden shifts to the defendant to "present a compelling case that the exercise of jurisdiction would not be reasonable. *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)).  Where a court evaluates personal jurisdiction on written submissions alone, and without an evidentiary hearing, a plaintiff's burden is to "make a prima facie showing of facts that would support jurisdiction." *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1168 (9th Cir. 2006).

Plaintiff argues that Defendants Calarco and Coffey personally availed themselves of the privilege of conducting activities in California by directing intentional tortious conduct toward Plaintiff in California.  Specifically, Plaintiff contends that Defendants acts of conversion and fraud were directed at Plaintiff in California, and harmed Plaintiff in California.

"[T]he purposeful availment prong of the personal jurisdictional analysis can be met if a defendant's 'intentional conduct [in the foreign state was] calculated to cause injury to [the plaintiff] in [the forum state].'" *Myers v. The Bennett Law Offices*, 238 F.3d 1068, 1072 (9th Cir. 2001) (citing *Calder v. Jones*, 465 U.S. 783, 791 (1984)).  The Amended Complaint details allegations of conversion and fraud by Defendants Calarco and Coffey, and a fair reading of the Amended Complaint indicates that the conduct harmed Plaintiff in California, the State where Plaintiff is principally located.  Though a corporate plaintiff does not necessarily suffer harm under *Calder's* effects test in the same way that an individual suffers harm in the state of his or her residence, *see Core-Vent Corp. v. Nobel Industries*, 11 F.3d 1482, 1486 (9th Cir. 1993), the Court finds that the Amended Complaint and supporting affidavits indicate intentional conduct expressly aimed at Plaintiff in California, and sufficient injury to Plaintiff in California to support purposeful availment.  *See also Yahoo!, Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1207 (9th Cir. 2006) ("If a jurisdictionally sufficient amount of harm is suffered in the forum state, it does not matter that even more harm might have been suffered in another state.").

Defendants do not challenge either the reasonableness of the Court's exercise of personal jurisdiction or that Plaintiff's claims arise out of Defendants' tortious activities directed toward Plaintiff in California.  However, after reviewing the allegations of the Complaint and the parties' affidavits, the Court concludes that Plaintiff's claims do arise out of Defendants' forum related activities, and Defendants have not met their burden to establish that the exercise of jurisdiction would be unreasonable.

The motion to dismiss for lack of personal jurisdiction filed by Defendants Calarco and Coffey (Doc. # 21) is DENIED.

/

**III.  Plaintiff's Motion for Leave to Amend (Doc. # 23)**

Plaintiff seeks leave of the Court to file a Second Amended Complaint.  The proposed Second Amended Complaint seeks to add two additional parties as Defendants, Elliot Cooperstone and Prodigy Health Group.  Defendants contend that the motion for leave to amend should be denied because Plaintiff knew that Cooperstone and Prodigy Health Group existed before Plaintiff filed the First Amended Complaint.  Defendants further contend that the Second Amended Complaint fails to state a claim against Cooperstone and/or Prodigy Health Group.

FED. R. CIV. P. 15(a) provides that a district court should "freely" grant a plaintiff's motion for leave to amend "when justice so requires."  "This policy is 'to be applied with extreme liberality.'" *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051-52 (9th Cir. 2003).  "Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend."  *Id.* at 1052; *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (detailing factors to consider in evaluating a motion for leave to amend, including undue delay, bad faith, repeated failure to cure deficiencies, and futility, among other things).

After reviewing the moving papers, the Court concludes that Defendants have not overcome the strong presumption in favor of granting motions for leave to amend.  This case remains in the early stages of pretrial procedures, discovery has not begun, and it does not appear that Plaintiff has so delayed in filing this motion as to constitute bad faith or prejudice to any Defendant.  Accordingly, Plaintiff's motion for leave to amend (Doc. # 23) is GRANTED.

Plaintiff may file the Second Amended Complaint which it attached to the motion for leave to amend on or before Friday, July 25, 2008.

## CONCLUSION

Defendants motion to dismiss for failure to state a claim (Doc. # 21) is GRANTED in part and DENIED in part.  The motion to dismiss is GRANTED with respect to Plaintiff's claims for violation of 18 U.S.C. §§ 1962(a) and 1962(b) of RICO.  The motion to dismiss is further GRANTED as to Plaintiff's breach of contract claims against Defendants Calarco and Coffey.  Plaintiff's breach of contract claim against Defendant Meritain is not dismissed.  The motion to dismiss is DENIED with respect to Plaintiff's claims for conversion, fraud, and violation of 18 U.S.C. § 1962(c).  The motion

to dismiss for lack of personal jurisdiction (Doc. # 22) filed by Defendants Calarco and Coffey is DENIED.   Plaintiff's motion for leave to file a Second Amended Complaint (Doc. # 23) is GRANTED.  Plaintiff may file the Second Amended Complaint which it attached to the motion for leave to amend on or before Friday, August 15, 2008.

   **IT IS SO ORDERED**.

DATED:  July 23, 2008

**WILLIAM Q. HAYES**
United States District Judge